THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH EAGLE, Defendant-Appellant.

First District (3rd Division)    No. 77-1845

Opinion filed September 19, 1979.

428

Ralph Ruebner and Kenneth Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, and Nicholas P. Lavarone, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

A jury found the defendant Joseph Eagle guilty of rape, deviate sexual assault, robbery and theft. The defendant's post-trial motion to vacate the verdict or grant a new trial was denied. Judgment was entered on the verdict and he was sentenced to two concurrent terms of 8 to 18 years in the penitentiary for the offenses of rape and deviate sexual assault to run concurrently with a sentence of 5 to 15 years for the offense of robbery. The theft verdict was vacated as being a lesser included offense of the robbery conviction. The defendant appeals.

The issues presented for review are (1) whether the prosecutor's comments in closing argument were so prejudicial as to deny the defendant his right to a fair trial, and (2) whether the trial court committed error by admitting into evidence fingerprints taken from a beer can which the police had subsequently flattened for storage purposes.

On September 15, 1976, at approximately 10:25 p.m., the complainant, who was a law school student, left the school library. Using her roommate's car, a blue Plymouth with a black vinyl top, she started driving towards her apartment located on West Haddon Street. She stopped to purchase a six-pack of beer, Old Style half quarts, and then drove to Pine and Haddon Streets where she parked the car. As she stepped out, two men appeared at the driver's side of the car. One of the men pointed an object at her, which she thought to be a gun, and ordered her to slide over to the passenger side of the front seat. He sat in the driver's seat and the other man, the defendant, got into the rear seat. The defendant warned her to keep her head down and not look at them or they would kill her.

The driver then ordered the complainant to give him the car keys. He asked her how much money she had and was told $6. The driver ordered her to give him her purse, and he handed it to the defendant. The driver drove the car into an alley between Haddon and Thomas Streets and headed west for approximately one-half block. He stopped the car, unzipped his pants and forced the complainant to put her mouth on his penis. Meanwhile, the defendant got out of the back seat and sat next to her. He unzipped her pants and forced his fingers into her vagina. The driver told the defendant to get out of the car to make sure no one was coming.

The driver got out of the car, walked around and re-entered from the passenger side. He forced the complainant down on the front seat and partially undressed her. After smashing out the dome light of the car, the driver forced the complainant to have intercourse with him for approximately 45 seconds. He then dragged her out of the car and pulled her down the alley toward the defendant when a dog began to bark. The driver immediately forced the complainant back into the car and the defendant returned and sat next to her. She was again warned to keep her head down; as the car proceeded through alleys the defendant again inserted his fingers into her vagina.

Approximately three minutes later, the driver stopped the car, pulled the girl out and forced her into an area between two garages, near a large yellow vapor light. There he forced her to lie down, undid her blouse and again had intercourse with her. The complainant testified that while this occurred the defendant was standing in front of her. After the driver stood up, the defendant forced her to have intercourse with him. He then told her to get dressed and led her to the car. While sitting beside her in the car, he took one of the half-quart cans of Old Style beer and offered it to her. She refused. The driver then pulled her from the car, gave her her books and told her to stay in the alley for 20 minutes.

After the assailants drove off in the blue Plymouth, the complainant

picked up her purse, which she found lying on the ground, and ran a block to the home of friends. A friend called the victim's roommate and drove the complainant home.

Two Chicago police officers arrived at approximately 11:45 p.m. They accompanied the complainant to the second alley where the alleged offenses occurred and recovered a half-quart Old Style beer can. The officers then took the complainant to the emergency room at St. Anne's Hospital for an examination and left the beer can in the police room at the hospital.

The complaining witness testified that the car keys and $6 were missing from her purse. When she returned home from the hospital, she further examined her purse and discovered a Zippo lighter, a small gold pill case, a lavender checkbook and an eyeglass case were also missing. She described the top of the pill case as being ceramic and yellow with a fruit design and stated the checkbook cover was embossed with her name.

In the early morning hours of September 16, 1976, the complainant went to a police station and, after viewing a lineup, identified the defendant as one of her assailants. She also was shown a pill box and checkbook which she identified as belonging to her. In court the complainant again identified these items and also the jacket and hat the defendant was wearing at the time of the alleged offenses. She also made an in-court identification of the defendant.

A witness for the prosecution testified that the complainant rang the doorbell at approximately 11:30 p.m. on September 15, 1976. He also stated that she was very upset as she told him she had been raped and her roommate's car had been stolen.

Doctor Tobin Torralba, a licensed physician at St. Anne's Hospital, testified that he examined the complainant in the emergency room during the early morning hours of September 16, 1976. He conducted an external and pelvic examination of the complainant. A smear of her vaginal canal proved positive for sperm.

Chicago Police Officer James Maylon testified that on September 16, 1976, at approximately 2:30 a.m. he and his partner, Officer Gallagher, received a radio call concerning a man stripping an auto at 71st and Halsted. The two officers proceeded to that location and observed the defendant holding a screwdriver by the trunk of a blue Plymouth with a black vinyl top. The defendant fled but was apprehended by Officer Maylon. The officer searched the car and recovered the complainant's checkbook from the front seat. He also searched the defendant and found a yellow pill box in his possession.

Officer Maylon then proceeded to the 7th district police station and inventoried the following items: a yellow pill case, a black leather jacket

and white hat worn by the defendant, a screwdriver and the complainant's checkbook. These items were identified in court by Officer Maylon as those which were obtained from the defendant at the time of arrest.

Chicago Police Officer Albert Pribek, who works in the evidence technician section of the crime scene processing unit, testified that on September 16, 1976, at approximately 1:10 a.m., he proceeded to the emergency room at St. Anne's Hospital. He received a half-quart metal beer can, labeled Old Style, and processed the can for fingerprints. After dusting the can, he lifted two fingerprints and photographed them. At trial, Officer Pribek identified the beer can and noted it had been flattened for storage purposes after the lifts had been taken. He also identified one of the fingerprints he lifted from the can.

Officer Theatrice Patterson, a patrolman technician for the Chicago Police Department, testified as an expert in the field of fingerprint analysis. He testified that he compared the negative photograph of a lift taken from the beer can with the inked fingerprint card of Joseph Eagle and determined the prints were made by the same person.

The parties stipulated at trial that if Officer Moaoyo was called to testify he would state that on September 16, 1976, as the lock-up keeper at the 7th district police station, he took fingerprints of the defendant. He would further testify that the fingerprint card used by Officer Patterson was the card of the defendant's fingerprints that he had prepared. The parties also stipulated that tests of the trousers the defendant was wearing at the time of his arrest showed the presence of dried mucous crystalline, but no presence of sperm.

As the final witness for the prosecution, the complainant's roommate testified she lent her blue Plymouth with a black vinyl top to the complainant on September 15, 1976. She viewed the car at the 7th district police station on September 16, 1976, and noted the dome light of the car had been broken.

Daniel Reed Jones was called on behalf of the defendant and testified that on September 15, 1976, he and the defendant went to the YMCA located at 826 South Wabash between 4:30 and 5 p.m. Jones had been employed there as an elevator operator but stated he was not working that night. Jones, the defendant and Kim Jackson left the "Y" at approximately 11:30 p.m. and went to Jones' apartment located at 7127 South Halsted to play cards. He testified that at 1:30 a.m., as he and the defendant went to buy beer at the corner liquor store, they noticed a blue car parked in the alley. Returning from the store, Jones stated he went up to his apartment while the defendant went out to the car. Five to ten minutes later he saw the police apprehend the defendant.

The prosecution called Linda Gierut as a rebuttal witness. Ms. Gierut,

a personnel clerk at the YMCA Hotel, testified that Jones was discharged on September 12, 1976.

## I

The defendant first contends that he was denied his constitutional right to a fair trial because the prosecutor made allegedly prejudicial comments during closing arguments. The defendant maintains that the prosecutor implied that the defense counsel manufactured a meritless defense, one that was often used in sexual offense cases, and employed dishonest tactics such as "creating a smoke screen" regarding the lighting in the alley and "com[ing] up with concocted theory or concocted ideas." Objections to these comments were made and sustained. Nevertheless, the defendant contends the comments encouraged the jury to disregard the defense presented and the objections did not cure the jury's prejudice, thereby constituting reversible error.

To support his contentions, the defendant relies on *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317; *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19, and *People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295. However, cases involving prosecutorial misconduct must be decided on their own facts (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880), and we believe that the factual situation in the instant case can be distinguished. In *People v. Freedman* the prosecutor in his closing argument charged the defendant with lying, termed defense counsel as a "clever lawyer" and implied the defendant and his counsel fabricated a defense. In *People v. Stock*, the defense counsel was also accused of "making up the defense case and suborning perjury," and the prosecutor commented on the failure of two of the defendants to take the stand, which in and of itself is reversible error. (See, *e.g., Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490.) In *People v. Monroe* the prosecutor's accusations of fraud by the defense counsel were found to have aroused the antagonism of the jury thereby entitling the defendant to a new trial.

▪▪▪ We do not feel that the trial court in the case at bar failed to control the trial (*People v. Stock*) or that the antagonism of the jury was aroused (*People v. Monroe*). Nor do we feel that the prosecutor's comments in the instant case prejudiced the defendant since the evidence was not close and not highly conflicting (*People v. Freedman*). The evidence was overwhelming. The prosecution's case included a positive identification of the defendant by the complainant, the recovery of the defendant's fingerprint off a beer can found near the scene of the alleged offenses, the defendant's possession of the complainant's pill box at the time of his arrest, and the complainant's identification of the clothing the defendant

wore at the time of his arrest. The remarks of the prosecutor, even if improper, were not a material factor in the defendant's conviction and any prejudice caused to the defendant was not sufficient to warrant reversal. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Molsby* (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336; *People v. Radford* (1978), 65 Ill. App. 3d 107, 382 N.E.2d 486.) We also hold that the prosecutor's reference to the creation of a smoke screen was not prejudicial. Similar comments have been held not to constitute reversible error since, at most, the inference was that the defense obscured the issues. *People v. Palmer* (1970), 47 Ill. 2d 289, 265 N.E.2d 627, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532; *People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514.

■■ ■ The defendant also alleges that the jury was prejudiced by the prosecutor's insinuation that the testimony of the defendant's alibi witness, Daniel Reed Jones, was intentionally fabricated. He further alleges that the prosecutor's expression of a personal opinion as to a witness' veracity was improper. The following discourse took place during closing argument:

"[Assistant State's Attorney]: What makes Jones a liar is that if you recall, I asked him on cross examination did you see him on the 14th, the day before? Or the 13th? 'Yeah, I am pretty sure he came by over at the hotel while I was working.' Dannie Jones was fired September 12th.

[Defense Counsel]: Excuse me, Judge, I think he said he may have. He said he may have. He didn't say for sure, Judge.

The Court: It will be up to the jury to recall what the evidence was.

[Assistant State's Attorney]: He was fired September 12th. Dannie, when he took the stand, didn't know that we would find that out. I decided to check after Dannie testified.

[Defense Counsel]: Objection, Judge.

The Court: I would sustain the objection."

A prosecutor's characterization of a witness' testimony as false is not improper where it is apparent that his opinion is based solely on the evidence and inferences that can be drawn therefrom. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644; *People v. Jackson* (1974), 19 Ill. App. 3d 689, 312 N.E.2d 405, *cert. denied* (1975), 420 U.S. 935, 43 L. Ed. 2d 412, 95 S. Ct. 1144.) In this case we believe that the prosecutor's comment was justified by the testimony of the YMCA Hotel clerk that Jones had been discharged. In any event, the objection to the comment was sustained and for that reason we do not believe the defendant was prejudiced.

■■ ■ The defendant's final claim of prejudice concerns the prosecutor's

comment regarding the defendant's failure to call an expert witness to contradict the fingerprint identification testimony given by Officer Patterson. A prosecutor cannot undermine the defendant's presumption of innocence nor can he shift the burden of proof by commenting upon the defendant's failure to call a witness when the witness is equally accessible to the State. (*People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286; *People v. Pepper* (1971), 2 Ill. App. 3d 621, 276 N.E.2d 416.) However, the courts of this State also have held that the prosecutor can comment on the fact that pieces of evidence stand in the record undenied and unexplained. (*People v. Sicks* (1921), 299 Ill. 282, 132 N.E. 573; *People v. Miller* (1917), 278 Ill. 490, 116 N.E. 131.) The court in *People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004, stated:

> "[I]t is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution.

■■ As a final argument regarding prosecutorial comments, the defendant argues that the trial court's granting of the defense counsel's objections did not cure the errors. Rather, he alleges the prosecutor's repeated improper arguments after adverse rulings by the court eliminated the salutary effect of the court's rulings. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 433.) We cannot agree. Although many of the prosecutor's comments were improper, we do not think that, viewed in totality, they substantially prejudiced the defendant. Since the evidence was overwhelmingly against the defendant, we believe that the prosecutor's comments did not constitute a material factor in the defendant's conviction. *People v. Clark*; *People v. Radford.*

## II

The defendant also alleges that the trial court erred in admitting into evidence fingerprints lifted from an Old Style beer can which the police had subsequently flattened for storage purposes. He alleges that the altered condition of the can deprived him of any meaningful opportunity to make his own tests and examinations.

■■ When real evidence, such as the beer can, is offered into evidence, the proper foundation must be presented. Testimony must be offered to connect the object to the crime and to show that the item is substantially unchanged. If the object is susceptible to alteration by tampering, the trial court can require a more elaborate foundation that would trace the chain

of custody to render improbable a claim of tampering. *People v. Cole* (1975), 29 Ill. App. 3d 369, 329 N.E.2d 880; McCormick, Evidence §212, at 527-28 (2d ed. 1972).

■■ An examination of the record in the instant case indicates that a proper foundation had been laid by the prosecution. Two police officers, who responded to the friend's call, recovered the beer can from the alley where the alleged rapes occurred. The complainant testified the beer can was then brought to St. Anne's Hospital and put into the police room in the emergency room area. Officer Pribek testified that he obtained the beer can from two police officers in the police room at St. Anne's Hospital. He lifted two prints, attached identifying tags to them and photographed the lifts. After the prints were lifted, he put the can in a plastic bag and attached a label containing the case information. The fingerprint lifts and photograph negatives were stapled to Officer Pribek's report which was sent along with the beer can to the crime laboratory. At trial, Officer Pribek identified the beer can and one lift and testified that the lift was in the same condition as it was on September 16, 1976, the date he processed the can for fingerprints. Officer Patterson testified he received the negative photograph of the lift from the crime laboratory. He identified the photograph negative and said it was a true and accurate representation of the fingerprint lift which had been identified by Officer Pribek. He further testified that he compared the negative with the fingerprint card containing the defendant's fingerprints and found them to be from the same person. The authenticity of the fingerprint card was stipulated to at trial.

■■ Neither the positive identification of exhibits by the prosecution's witnesses nor any of the other testimony was impeached. Furthermore, nothing appears in the record to suggest a tampering, whether intentional or accidental, with the State's evidence that would require its exclusion. The defendant does not contend that the beer can was improperly dusted. There is no allegation that the fingerprint lift was in any way altered, nor does the defendant contend that the fingerprint lift introduced into evidence was not one of the two prints lifted from the beer can. We will not interfere with the trial court's discretionary ruling on identification of evidence sufficient for its admissibility unless there is an abuse of discretion. (*In re Rivera* (1977), 46 Ill. App. 3d 515, 361 N.E.2d 84.) We find no abuse.

The Illinois cases cited by the defendant concerning the destruction of evidence are not relevant. Both *People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, and *People v. Dodsworth* (1978), 60 Ill. App. 3d 207, 376 N.E.2d 449, involved the destruction of allegedly prohibited substances. In those cases the courts imposed a duty on the State to preserve a portion of the confiscated substance so that an independent analysis

could be made by the defendant. However, evidentiary matters in drug cases have been distinguished because in those cases the nature of the substance involved is an element of the crime. *People v. Baer* (1974), 19 Ill. App. 3d 346, 311 N.E.2d 418.

The defendant contends that the beer can should have been preserved in its original form so that the defense could have attempted to make a "second lift suitable for comparison purposes." However, notwithstanding the possibility of a second lift, which is unsupported by the record and questionable at best, it was not error for the court to admit the fingerprint exhibits once the proper foundation had been laid. The possible additional print would have affected the weight of the prosecution's evidence rather than its admissibility.

■■ We do not agree with the defendant that the State has an obligation to preserve objects from which fingerprints are lifted. The evidence is preserved once the latent print is lifted and kept available for comparison. The defendant's protection should not be in the imposition of a burden on the State to guard the object until the trial is over. Rather, we feel the defendant is adequately protected by his right to seek exclusion of the evidence when he can concretely show that the State substituted or tampered with the fingerprints lifted from the object.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.