THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLAUDETTE MILLER, Defendant-Appellant.

First District (2nd Division)    No. 80-1071

Opinion filed June 23, 1981.

James J. Doherty, Public Defender, of Chicago (Robert Guch, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Kevin W. Horan, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant Claudette Miller was charged with possession of both marijuana and heroin. The State presented evidence that the police entered defendant's apartment pursuant to a search warrant and, in the presence of defendant and several other persons, they found 109 grams of marijuana in defendant's purse and 11.4 grams of heroin on her bed. The

defendant presented testimony of defendant's son that defendant shared the bedroom with another woman, Earnestine Outlaw, and that defendant was not home at the time of the search. A jury returned a guilty verdict against defendant on the marijuana count, and defendant received an 18-month sentence. Defendant appeals and raises as issues whether: defendant was proven guilty beyond a reasonable doubt; and prejudicial comments by the prosecutor during closing argument require a new trial. For the reasons which follow, we affirm.

Chicago Police Officer Thomas Finnelly testified for the State. On June 19, 1978, he and several other police officers went to 1746 N. Humboldt pursuant to a search warrant. After they knocked on the rear door, a woman, subsequently determined to be Earnestine Outlaw, came to the door. When Finnelly announced that he was a police officer and possessed a search warrant, Outlaw turned and ran toward the front of the apartment. Officer Aubrey O'Quinn then broke a pane of glass in the door, opened it, and the police entered. They saw Outlaw in the living room and defendant in the dining room. Defendant told the police that anything they found in the apartment was hers. The police showed defendant the warrant, advised her of her *Miranda* rights, and searched the apartment. Finnelly entered the bedroom near the front of the apartment and noticed women's clothing, cosmetics, and a hair dryer. He then observed tinfoil packets on the bed next to a strainer, opened one, and observed a tan powder subsequently determined to be heroin. No one else was then in the bedroom, but he noticed defendant standing at the bedroom door. Finnelly discovered a brown purse which contained a plant material, later determined to be marijuana, as well as identification cards in defendant's name, including a social security card, checkbook, and welfare card. He found seven manila envelopes containing similar plant material in the pocket of a woman's suit hanging in the closet and a triple beam scale near the window. There was a bill from Commonwealth Edison in a dresser drawer addressed to "C. Miller 1746 North Humboldt, 2F," the apartment he was searching. He informed defendant that she was under arrest. She went back into the bedroom and removed her wallet from the brown purse where the drugs had been found. Later, at the police station, she gave 1746 Humboldt as her address.

Chicago Police Officer Aubrey O'Quinn's testimony substantially corroborated that of Finnelly concerning the details of the events that day. A stipulation was entered into evidence that Christine Provost, an expert in the analysis of compounds, would testify that the plant found in defendant's purse was marijuana weighing 109 grams; the plant found in the manila envelope was also marijuana, weighing 24.72 grams; and the tan powder found in the tinfoil was heroin weighing 11.4 grams.

The only defense witness to testify was Maurice Miller, defendant's

son, who was 16 years old at the time of the incident. He then lived in the apartment with his mother, three brothers, and a sister. Earnestine Outlaw, a friend of his mother, also had been living there for three months because her house had burned down. The apartment had two bedrooms and all of the children used one bedroom, and defendant and Outlaw used the other. Defendant was not home much of the day of the search and did not arrive home until five or 10 minutes after the police entered. Outlaw kept her clothes in the same room as defendant. Outlaw had been home all day, and he had seen her go into that bedroom once. He had never seen defendant with any drugs.

As previously noted, the jury returned a guilty verdict on the marijuana possession count, but not on the count of heroin possession.

■■ The parties do not dispute the general propositions of law involved; only their application. The State must establish two elements to obtain a conviction for unlawful narcotics possession: first, defendant's knowledge of the presence of the narcotics, and, second, defendant's immediate and exclusive control of the narcotics. (*People v. Nettles* (1961), 23 Ill. 2d 306, 307, 178 N.E.2d 361.) The requisite knowledge may be proved by evidence of acts, declarations or conduct from which it may be inferred that the accused knew of the existence of the narcotics at the place they were found. (*People v. Bell* (1972), 53 Ill. 2d 122, 126, 290 N.E.2d 214.) Concerning both knowledge and control of the narcotics, where narcotics are found on the premises under the control of the defendant, this fact in and of itself gives rise to the inference of both knowledge and possession by defendant which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury a reasonable doubt as to defendant's guilt. (*People v. Connie* (1964), 52 Ill. App. 2d 221, 227, 201 N.E.2d 641.) When the two necessary elements are proved through defendant's control of the premises, this circumstance gives rise to constructive possession. *People v. Kissinger* (1975), 26 Ill. App. 3d 260, 263, 325 N.E.2d 28.

Based upon the foregoing rules, defendant argues that the evidence failed to establish beyond a reasonable doubt that she had knowledge of the presence of the drugs and that the drugs were in her immediate possession and control, either actually or constructively. As to knowledge, defendant asserts that the only evidence of knowledge in the record was her statement made to the police that anything in the apartment was hers. She claims that because there is no evidence that she knew of the presence of drugs when the statement was made, the statement does not establish the requisite knowledge. With respect to control, defendant claims that she did not have actual possession because she did not have physical dominion over the drugs. She urges further that constructive possession could not arise because she was not in control of the room where the

drugs were found, relying principally upon the testimony of defendant's son that defendant and Outlaw shared the same bedroom and closet.

■■ The State responds that although actual knowledge and possession were not shown, the evidence clearly demonstrates that defendant had control of the premises from which the inference of knowledge and possession arises, citing *People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, and *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767. The State argues that the control of the premises arises from the following facts: O'Quinn and Finnelly testified that when they entered the apartment at 1746 Humboldt, defendant was present; when the officers entered the apartment, defendant told them that the apartment and everything in it were hers; when Finnelly was searching the bedroom and discovered the tinfoil packets containing heroin on the bed, defendant was standing outside the bedroom door; when Finnelly searched a brown purse hanging on the doorknob of the bedroom closet he found that it contained a social security card, welfare card, and checkbook, all in defendant's name, and a large plastic bag with marijuana; Finnelly found a utility bill in the dresser drawer in the bedroom addressed to defendant at the subject address; and, at the police station, defendant gave police 1746 Humboldt as her address.

The State's position is sustained by four cases, *People v. Embry, People v. Nettles, People v. Galloway,* and *People v. Bell,* which involved factual situations quite similar to the instant case as they relate to inferences of knowledge and possession of narcotics, based upon the nature of the commodities and the manner in which its alleged traffic is conducted. In *People v. Embry,* the police testified that when they searched the apartment, defendant was in the kitchen, his wife and several friends were in a bedroom, and several other persons were in the front room. The police found narcotics under a towel in the bathroom. Defendant admitted that he paid the rent on the apartment and kept clothes there, but claimed that he no longer lived there because he and his wife were separated. Defendant there was convicted of possession and appealed. The supreme court affirmed, holding that the fact that defendant paid the rent, was present when the narcotics were found, and neither admitted nor denied ownership when confronted by the police, created the inference that defendant had knowledge and possession even if it be assumed that defendant's wife also had possession of the drugs, since the rule that possession must be exclusive does not mean the possession may not be joint. (20 Ill. 2d 331, 335.) In *People v. Nettles,* when the police entered the apartment, defendant, his girlfriend and two other persons were present. The police discovered a paper bag containing narcotics behind the entrance door. Defendant lived there with his girlfriend but testified that he did not pay the rent and denied that the narcotics were

his. The police testified that when they asked defendant about the bag of narcotics, he stated "anything you find in the apartment is mine." That defendant's conviction was affirmed on appeal, the supreme court holding that these facts showed that the premises were under defendant's control, permitting the inference of knowledge and possession of the narcotics.

In *People v. Galloway*, the police entered an apartment and found defendant in a bathroom and his wife and a friend in the front room. The police found an envelope containing narcotics in a packet of letters, some of which were addressed to defendant, while searching a bedroom drawer. Defendant testified that he was not living in the apartment at the time. The police testified that the bedroom contained men's clothing and that defendant had given this address when furnishing further information at the police station. The supreme court affirmed the conviction, holding that the evidence showed defendant's control of the premises. In *People v. Bell*, the police entered an apartment, which defendant admitted was his residence, and found defendant and another man in defendant's bedroom. Heroin was discovered in a watch case on the bed, and hypodermic needles and a heroin cooker were found on a dresser. Defendant testified that he had no knowledge of the heroin. Defendant was convicted, and the supreme court affirmed, holding that defendant had control of the premises. The court rejected defendant's argument that because another person was in the room, he could not be found guilty of unlawful possession. (See also *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46; and *People v. Townsend* (1980), 90 Ill. App. 3d 1089, 414 N.E.2d 483.) It is our conclusion that the evidence showed beyond a reasonable doubt that defendant had knowledge of the drugs and was in control of the premises, and we find no basis upon which the jury's verdict may be disturbed in this regard.

■■ Defendant next asserts that the State made improper and prejudicial comments in its closing argument, requiring reversal. In its initial closing argument, the prosecutor indicated that although the narcotics were found in defendant's apartment, it was her position that they belonged to Earnestine Outlaw, rather than to her. The State alluded to Maurice Miller's testimony that Outlaw had moved in three months before the police search and then commented that it would be unlikely that the few belongings salvaged from the fire would include such things as narcotics and a triple beam scale. The State concluded that it would be unreasonable for Outlaw to move into defendant's house to "set up shop" for the sale of drugs. Defendant's objection thereto was overruled. The State made no further mention of any drug sale during the remainder of the initial closing argument.

The defense then made its closing argument, during which it was stated that defendant had not been charged with the sale of drugs, only possession. Defense counsel asserted that someone was selling drugs out of the apartment based on the drugs and paraphernalia found, but that it was not defendant. The defense argued that defendant was not there when the police arrived, but Outlaw was, and concluded by suggesting that Outlaw was preparing the drugs for sale.

On rebuttal, the State made the following comments, which defendant identifies as prejudicial. The prosecutor explained that this case involved circumstantial evidence. For instance, a title to a car in one's name is circumstantial evidence that one owns the car. The prosecutor mentioned the scale, the premeasured packets of marijuana, the strainer, and stated that these items allowed the inference that someone was selling drugs. The prosecutor concluded that if all of the drugs and paraphernalia were in such a small house, defendant must have known about them and any drug sales taking place. The prosecutor then said, among other things, that if narcotics were found in a safe deposit box, the records of who owns the deposit box would be brought in to show ownership of the drugs. Similarly, a car seller keeps records of what cars he sold and to whom; however, in heroin sales, nobody keeps records on sales. The prosecutor then posited, "Let's say instead of selling cars, a dealer has got a big, huge showroom over on Cicero Avenue, or Western Avenue, selling heroin. Joe's Heroin Sales, Incorporated." Defendant objected and, at a sidebar, the court instructed the State to return to commenting on the facts of this case. The prosecutor then stated that there are people who believe that marijuana use leads to heroin use; and that a person selling marijuana may also be selling other drugs. Defendant's objection to this comment was sustained, and the jury was instructed to disregard it.

Defendant maintains here that the foregoing comments were prejudicial because they indicated defendant was selling drugs, yet defendant was not charged with the sale of narcotics. The State counters that although it mentioned the sale of drugs, nowhere did it say that defendant was selling the drugs. Rather, the State claims it was merely responding to defendant's closing argument that Outlaw was selling drugs. Even if improper, the comments did not result in denial of a fair trial since, under *People v. Franklin* (1976), 42 Ill. App. 3d 408, 415, 355 N.E.2d 634, such remarks must constitute a material factor in a defendant's conviction and result in substantial prejudice; and under *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 164, 341 N.E.2d 153, the determination must be made based on the context of the remark, its relation to the evidence, and the effect on the defendant's right to a fair trial. In this setting, we find that the remarks were not sufficiently prejudicial so as to require reversal. The jury was

reminded that defendant was not charged with the sale of drugs; an instruction to that effect was given; and defendant's objections to the last two comments were promptly sustained.

From the foregoing, we conclude that defendant's guilt was established beyond a reasonable doubt and the comments of the prosecutor were not of a sufficiently prejudicial nature as to warrant reversal. We therefore affirm.

Affirmed.

STAMOS and PERLIN, JJ., concur.