THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURT DAVIS, Defendant-Appellant.

First District (3rd Division)    No. 79-2158

Opinion filed March 10, 1982.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Lawrence T. Krulewich, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Curt Davis, was charged by indictment with armed robbery. He was convicted by a jury and sentenced to 6 to 12 years' imprisonment. On appeal, the defendant argues that he was not proved guilty beyond a reasonable doubt and that he was denied a fair trial because the State did not update its answer to defendant's discovery motion and because the State's rebuttal argument was improper.

On August 29, 1975, Tank's Tavern, which was owned and operated by Helen and Homer Wright, was robbed. Helen Wright was bartending at the time of the robbery.

Helen testified that the defendant and another person entered the packaged goods section of the bar. The defendant stood about three feet across from her and purchased a quart of beer. The other person asked to use the washroom, walked toward it, and then fired a gun at the ceiling and announced a stickup. The defendant pulled out a gun and fired at Helen. She picked up a gun, fired back and then hid under the bar sink.

Another man went behind the bar and took her gun. He also took money from the cash register and some liquor. Approximately four or five minutes later, Helen heard some shots and then silence. She got up and saw the defendant lying on the floor in a pool of blood. The defendant was struggling with a patron, Percy Benson,[1] and was trying to move toward the cigarette machine.

On cross-examination, Helen Wright denied that at the preliminary hearing she testified that it was the defendant who asked to use the washroom after the man behind him announced the robbery.

Chicago police officer Leon Bowens testified that on August 29, 1975, when he arrived at Tank's Tavern, the defendant lay bleeding on the floor and was surrounded by several men. Officer Bowens saw a small caliber gun laying under the cigarette machine near the defendant.

Investigator Michael Cummings inventoried a .22-caliber gun which was recovered from under the cigarette machine. He testified that it contained five live .22-caliber rounds. The gun could have held six rounds. No expended shells were given to Cummings.

Mary Ann Mohan, a microanalyst for the Chicago Police Department, testified that blood stains on the .22-caliber gun were of Type A blood. She stated that the defendant had Type A blood.

Lonnie Burks, a patron at the tavern, testified that the defendant took his watch while he was lying on the floor. Thereafter, Burks heard a few shots. When he got up, Burks saw the defendant lying on the floor bleeding and trying to move towards a gun under the cigarette machine. Percy Benson was kicking the defendant, and Al McClain was trying to restrain Benson.

On cross-examination, Burks stated that he had been at the tavern for about 4½ hours and had had five or six beers before the robbery occurred. He stated that he looked at the defendant's face when he gave the defendant his watch. There were no lights on the floor of the tavern. Burks also testified that on the day of the trial, he discussed the robbery with the prosecutor and the State's witnesses.

Ruby Thomas testified that she was a patron at the tavern when the robbery occurred. She stated that the man lying on the floor after the robbery was the person who shot at Helen Wright.

Albitron McClain testified that his wallet was taken during the robbery. After the robbers left, McClain got up and saw Percy Benson kicking the man on the floor who was crawling toward the cigarette machine. McClain testified that he told Benson to stop and wait for the police to arrive.

On cross-examination, McClain testified that he did not remember

---

[1] Percy Benson was deceased at the time of the trial.

telling defense counsel that he did not know if the man who bought beer around the time of the robbery was involved in the robbery. He also denied telling defense counsel that the reason he attempted to stop Percy Benson from kicking the man on the floor was because he did not think the man on the floor was one of the robbers.

Homer Wright testified that when the robbery occurred, he was in the living quarters in the rear of the tavern. He heard some shouting and gunshots and looked through a peephole and saw four men with guns in the front part of the tavern. Homer identified the defendant as one of the men and said the defendant was holding a .38, a .32 or some kind of pistol. He watched the robbers for about two minutes and, with his revolver and 12-gauge shotgun, went outside to the front of the tavern and waited behind a parked car. When three of the robbers left the tavern, Homer called to them and they ran. Then, as the defendant was backing out of the tavern, Homer shouted at him. The defendant turned and fired at Homer and Homer fired back. The defendant fell back on the floor.

Homer further testified that he identified the defendant and a co-defendant at a lineup but on cross-examination admitted that he could not find the defendant in either of the State's photographs of the lineup he had viewed. Homer stated that he did not tell the police or investigators from the Public Defender's office that he had fired his shotgun at the defendant. He admitted that if an innocent person was shot in a tavern by one of its owners, that person could have a claim against the owners. On redirect examination, Homer testified that he could not remember whether the defendant was in the lineup.

The sole defense witness was Gregory Middlebrooks. He testified that he went to the home of Al McClain with defense counsel and McClain said that he stopped the people from kicking the wounded man on the floor of the tavern because he felt that the man was not involved in the robbery.

The jury returned a guilty verdict against the defendant.

The defendant's first argument on appeal is that he was not proved guilty beyond a reasonable doubt because the identification testimony of Helen Wright, Lonnie Burks and Ruby Thomas was weak and because the Wrights' testimony was conflicting, contradictory and biased.

An identification by one credible witness who had a good opportunity to view the defendant under circumstances that would permit a positive identification is sufficient to sustain a verdict of guilty. (*People v. Rodriguez* (1980), 89 Ill. App. 3d 941, 412 N.E.2d 655.) The key factor is whether the witness had an adequate opportunity to view the offender at the time of the commission of the crime. (*People v. Brown* (1977), 50 Ill. App. 3d 348, 365 N.E.2d 907.) The conditions for viewing the offender

need not have been perfect and the time for observation need not have been of a prolonged nature. *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.

At trial, Ruby Thomas testified that the person lying on the floor bleeding (who was identified by other witnesses as the defendant) was one of the offenders. We believe the jury could find her testimony credible, despite the fact that she could not identify the person on the floor. She was at the robbery and was near the packaged goods section of the tavern during the time the defendant purchased the beer.

Helen Wright observed the defendant when he came into the tavern, during the time he purchased the quart of beer from her, and after the robbery when he was lying on the floor. She testified that the defendant was less than three to four feet across from her when he purchased the beer. She also testified that the bar was not brightly lit but that she could see well. We believe this evidence supports a finding that Helen Wright's identification was positive and credible.

We also reject defendant's contention that Lonnie Burks' identification was weak because he did not view the defendant at any pretrial lineups and because he saw a photograph array that included the defendant's picture shortly before trial. The weight to be afforded that identification, however, was for the jury to decide. We believe there was ample evidence for the jury to find that the in-court identification by Burks was positive and that Burks had ample opportunity to view the defendant at the time of the robbery. Burks testified that he saw the defendant when the defendant took his watch. Burks was lying on the floor on top of another patron. Although he testified that "it was kind of dark" on the floor, Burks also said that he looked up at the defendant long enough to recognize him.

The defendant also argues that he was not proved guilty beyond a reasonable doubt because Homer and Helen Wright were biased witnesses who had a financial interest in proving that the defendant was not an innocent bystander. He contends that the Wrights could have been subject to criminal and civil liability for the wrongful shooting of a person in their tavern. He also argues that Helen Wright's pretrial and trial testimony was contradictory as to which offender asked to use the washroom and contends that it was incredible to believe that one of the robbers would have gone behind the bar to disarm her when she had just fired her gun. The defendant further argues that Helen Wright's testimony that the defendant had shot at her was not supported by the evidence since the gun found near him did not have a spent cartridge. Finally, the defendant questions the credibility of Homer Wright's testimony since he mistakenly identified the caliber of the defendant's gun and since he said he had

identified the defendant at a lineup when the defendant was not in the lineup pictures.

■■ Questions concerning credibility of witnesses and the weight to be afforded contradictory testimony are for the trier of fact to decide; and where the jury has made a determination based upon conflicting testimony, a reviewing court will not disturb that decision unless the evidence is so improbable as to raise a reasonable doubt as to the defendant's guilt. (*E.g., People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. McVay* (1981), 98 Ill. App. 3d 708, 424 N.E.2d 922.) After reviewing the record in this case we do not find, as a matter of law, that the testimony of the State's witnesses was so incredible as to raise a reasonable doubt of the defendant's guilt. The defendant was arrested at the scene of the robbery, as he lay injured on the floor, and was identified at trial by three eyewitnesses. A fourth witness testified that the injured person was one of the robbers. Although the defendant argued that he was an innocent bystander and that the State's witnesses had conspired to protect the Wrights, the jury assessed and rejected this defense theory. We find no error in this regard and believe the evidence overwhelmingly established the defendant's guilt.

The next issue raised by the defendant is whether he is entitled to a new trial as a sanction for the State's failure to inform defense counsel of the photographic identification of the defendant by Lonnie Burks. During discovery, the defendant had requested information regarding any witness identifications, including photographic, of the defendant. During cross-examination of Lonnie Burks, defense counsel discovered that Burks had identified the defendant's picture from an array of photographs two weeks before trial which was three years after the robbery.

The State is under a continuing duty to disclose to defense counsel any additional material or information that comes to its attention after pre-trial discovery has been completed. (*People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104.) However, unless the undisclosed evidence is favorable to the defendant or material to his guilt, the error does not warrant a new trial. *People v. Williams* (1980), 91 Ill. App. 3d 631, 414 N.E.2d 1235.

The State contends that an identification confrontation did not occur when Burks was shown the photographic array in question and that, therefore, it was not required to disclose that viewing to the defendant. Assuming *arguendo* that the viewing resulted in an out-of-court identification that should have been disclosed to the defendant, we find that that information was not material to the defendant's guilt.

■■ After the defendant's counsel discovered that Burks had viewed the defendant's picture, he moved to suppress the defendant's in-court identi-

fication on the grounds that it was tainted by the photographic viewing. The trial court denied the motion and held that the in-court identification was independent of the pretrial viewing and that it was based on Burks' observations of the defendant at the time of the robbery. We agree with that conclusion (see *People v. Williams*; *People v. Lomax* (1980), 89 Ill. App. 3d 651, 411 N.E.2d 1212) and hold that the discovery error, if any, does not require reversal of the defendant's conviction.

The final issue raised by the defendant is whether the defendant was denied a fair trial due to prosecutorial misconduct during rebuttal argument. During rebuttal, the prosecutor accused defense counsel of confusing the issues and referred to the defense theory that the defendant was an innocent bystander as nonsense. The defendant argues that the prosecutor improperly expressed his personal opinion of the defense theory, disregarded the court's admonishments and impugned defense counsel's motives by implying that he was attempting to defraud the jurors.

A prosecutor may not express his personal beliefs as to the credibility of the witnesses or of the defendant's defense. (See *People v. Hawkins* (1980), 88 Ill. App. 3d 178, 410 N.E.2d 309; *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311.) We believe the prosecutor committed error in the instant case when he characterized the defense theory as nonsense, as "the most ridiculous thing I've ever heard," and when he said, "if you buy that [the defense theory], I'm sure counsel would like to talk to you after this case and sell you some stock." We do not believe, however, that the prosecutor impugned the integrity of defense counsel because he did not accuse the defendant or his counsel of perpetrating fraud or suborning perjury. See *People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295; *People v. Miller* (1981), 101 Ill. App. 3d 1029, 428 N.E.2d 1038.

■■ Improper comments do not result in the denial of a fair trial where such remarks do not constitute a material factor in the defendant's conviction. (*People v. Miller* (1981), 97 Ill. App. 3d 970, 423 N.E.2d 1152.) The materiality of the improper remarks must be determined based on a review of the facts in each case. In the instant case, the trial court sustained defense objections to many of the prosecutor's statements and the jury was instructed to disregard the remarks. Such actions have been viewed as sufficient to cure the error (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Bluitt* (1981), 98 Ill. App. 3d 19, 424 N.E.2d 62) and to find that the jury was not unduly influenced or misled (*People v. Grayson* (1980), 89 Ill. App. 3d 766, 411 N.E.2d 1177). In the instant case the errors arising from the prosecutor's improper comments were cured. Furthermore, we do not believe they were a material factor in the defendant's conviction since the evidence against the defendant was overwhelming. (*People v. Smith* (1980), 88 Ill. App. 3d 897, 410 N.E.2d 973; *People v. Eagle* (1979), 76 Ill. App. 3d 427, 395 N.E.2d 155.) Therefore,

we will not reverse the defendant's conviction and remand his case for a new trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.