THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN E. FLY, Defendant-Appellant.

Fourth District   No. 4—92—0736

Opinion filed August 19, 1993.

Daniel D. Yuhas and Gloria Ann Morris, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in the circuit court of Champaign County, defendant John E. Fly was convicted of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A)) and sentenced to 14 years' imprisonment. Defendant appeals, claiming that (1) he was denied his right to a speedy trial, (2) he was prejudiced by the State's mention of his failure to call witnesses where he rested at the close of the State's case, and (3) the trial court abused its discretion by refusing to answer a question submitted by the jury during deliberations.

On January 17, 1991, in Champaign County, an undercover police officer allegedly purchased 28.7 grams of a substance containing 33% cocaine from defendant. Defendant was not arrested at that time. On July 8, 1991, charges were brought against defendant in Champaign County. At the time charges were filed, defendant was serving a five-year prison term at Logan Correctional Center (Logan) on a conviction for unlawful possession of cannabis with intent to deliver.

In July 1991, defendant learned he might have an outstanding warrant when he received a newspaper clipping from a relative stating that a warrant had been issued for his arrest in Champaign County for allegedly selling drugs. On August 19, 1991, defendant sent a letter to the Champaign County circuit clerk's office (circuit clerk), asking if charges had been brought against him on July 8, 1991, and, if so, requesting a copy of charges and any court documents. Defendant contends he requested this information in order to file a speedy-trial demand.

On August 22, 1991, defendant's letter was returned to him by the circuit clerk, with a note across the bottom stating: "I find no charges being filed against you for the year of 1991." Defendant then asked his counselor at Logan to check once again for any charges against him. The counselor found nothing on record. Defendant was transferred to Decatur in November 1991 and enrolled in a work-release program. On April 18, 1992, while on a 48-hour pass from the work-release center, defendant was arrested in Champaign County pursuant to the warrant issued on July 8, 1991.

## I

Defendant first argues that he was unable to exercise his right to a speedy trial due to misinformation supplied by the circuit clerk's office. The right to a speedy trial is explicitly guaranteed in Federal prosecutions by the sixth amendment (U.S. Const., amend. VI) and has been made obligatory in State prosecutions by incorporation in the fourteenth amendment. This right is guaranteed under Illinois law. (Ill. Const. 1970, art. I, §8; Ill. Rev. Stat. 1991, ch. 38, par. 103—5.) The fact that a right to a speedy trial can be based either on constitutional or statutory grounds has led to some confusion in deciding speedy-trial cases. Existence of specific time limits under Illinois statute not found under the United States Constitution or Illinois Constitution creates a possibility of violation of the statutory guarantee without violating the constitutional guarantee.

It is not clear from defendant's argument whether he is asserting a lapse of the statutory time limit as the basis for his claim, or whether he is asserting a constitutional violation due to error by the circuit clerk. To address defendant's argument on the basis of the statutory time limit, we first note that under section 103—5(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 103—5(b)), a defendant must make a demand for a speedy trial before the 160-day term provided by the statute will begin to run. Due to the error of the circuit clerk, defendant was not able to make such a demand. In the absence of a demand for trial, for purposes of Illinois law, the 160-day term for a speedy trial does not commence. (*People v. Freeland* (1981), 103 Ill. App. 3d 94, 97, 430 N.E.2d 277, 280.) Thus, had we interpreted defendant's argument to be based upon his statutory right to a speedy trial, his argument would be without merit.

■ Since no demand for a speedy trial was ever actually filed, the trial court interpreted defendant's argument to be based upon his sixth amendment right to a speedy trial. Under the sixth amendment (U.S. Const., amend. VI) and article I, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, §8) the right to a speedy trial is not subject to a specific time limitation within which defendant must be tried. The standard for determining whether a defendant's sixth amendment right has been violated was set out by the Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182. Under the *Barker* standard, four factors are to be balanced in determining whether a delay in trial has breached constitutional limitations: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to defendant. No one of these factors singly is necessary or sufficient to support a finding that the right to a speedy trial has been violated. Rather, these factors are to be considered with all other circumstances within the case which might bear on the claim. "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." (*Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193.) The Illinois Supreme Court applied the same standard set forth in *Barker* in *People v. Bazzell* (1977), 68 Ill. 2d 177, 182-83, 369 N.E.2d 48, 50, citing *People v. Henry* (1970), 47 Ill. 2d 312, 316, 265 N.E.2d 876, 879, and *People v. Tetter* (1969), 42 Ill. 2d 569, 573, 250 N.E.2d 433, 435; see also *People v. Howell* (1983), 119 Ill. App. 3d 1, 456 N.E.2d 236, and *People v. Jackson* (1987), 162 Ill. App. 3d 476, 515 N.E.2d 390.

The trial court applied the *Barker* balancing test and held that defendant's constitutional right to a speedy trial was not violated. The trial court stated:

> "I can conceive of nothing, now having had the benefit of hearing the evidence adduced at trial, that suggests that there was any type of prejudice to Mr. Fly in terms of the preparation and presentation of his defense. *** The prejudice is he lost his opportunity *** to demand a trial within 160 days. That's the prejudice. But, I don't view that as the same thing as a constitutional violation of his constitutional right to a speedy trial. It's a violation of his opportunity to obtain or to demand a speedy trial under the provisions of the Illinois statute, which are not the same thing as the constitutional right to a speedy trial."

Although the circuit clerk's error in advising defendant that he had no outstanding warrants is not condoned, we find no prejudice to defendant's presentation of his case.

Defendant argued the date of his letter to the circuit clerk should serve as the starting point for the running of his concurrent sentence and, thus, he should be credited for incarceration time prior to his arrest for this offense. Defendant received a 14-year sentence, to run concurrently with the sentence he is presently serving. Defendant was given credit for all days served from the date of his arrest on April 18, 1992. In setting defendant's sentence, the trial court considered as a mitigating factor defendant's inability to resolve the case sooner due to the circuit clerk's error and imposed a concurrent, rather than consecutive, sentence.

Defendant had five prior criminal convictions, of which four were felonies. The Class X felony of which defendant stands convicted carries a sentencing range of 6 to 30 years' imprisonment. It is the opinion of this court that the trial court adjusted the sentence to address the facts and properly refused to consider time spent in custody prior to his arrest.

## II

Defendant next argues he was prejudiced by the State's suggestion during closing arguments that he could have, but did not, produce certain witnesses. He claims the trial court's attempt to correct the possible misconceptions created by the State's suggestion only served to mislead the jury. We recognize the State's comment as error, but are not convinced the error prejudiced defendant in such a way as to require reversal.

At trial, defendant did not present a case, but rested at the close of the State's evidence. In closing argument, counsel for defendant questioned why the State did not call its confidential source to testify. This confidential source was the individual who initially placed law enforcement officials in contact with defendant. Testimony at trial indicated the confidential source witnessed the alleged sale of cocaine by defendant to the undercover officer. Defense counsel asserted the State's failure to call the confidential source as a witness allows the jury to draw an inference that his testimony would be unfavorable to the State.

In rebuttal, the prosecution acknowledged the confidential source did not testify and mentioned that defendant had not produced certain individuals who were potential witnesses. During the State's evidence, a surveillance officer testified defendant had arrived for the drug transaction in an auto that contained four unidentified people. Those four were not called as witnesses. The record includes the following:

"[Prosecution]: [Defense counsel] said that we're missing *** the confidential source, and *** he did not testify. There are some other people that the Defendant had access to—

[Defense counsel]: Object.

THE COURT: I believe it's proper rebuttal argument. Overruled.

[Prosecution]: [N]amely, his four buddies in the Chevy. We don't know who they are. They were never introduced to [the undercover officer]. It was only this Defendant introduced to [the undercover officer]. The State hasn't got a clue as to who those four people are, but the defendant knows, and they're not here."

Following closing argument, the court addressed the matter of failure to call witnesses with an impromptu instruction to the jury:

"However, I overruled an objection by [defense counsel] during the State's rebuttal argument. [The prosecutor] was referring to the fact that the other individuals alleged to have been in the Chevrolet were known to the Defendant, and I held that that was a proper argument for you to consider with regard to the fact that those people did not testify, and it would be inappropriate to draw an inference against the State.

However, you must not consider that argument in any way as suggesting because it would be improper that there is any burden whatsoever on the Defendant to produce these in-

dividuals or that their absence in this way can give rise to an inference that their testimony would have been adverse to the Defendant. There is, obviously, no obligation on the Defendant to call them or any other witnesses."

Defendant cites *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103, where this court held it was reversible error for the State to comment on defendant's failure to present a witness at trial. In the case at bar, as in *Eddington*, the existence of potential defense witnesses was interjected into the case through the State's witnesses. The majority in *Eddington* held:

"As a general rule, it is improper for the prosecution to comment on a defendant's failure to present witnesses when such witnesses are equally accessible to both parties. (*People v. Popely* (1976), 36 Ill. App. 3d 828, 345 N.E.2d 125.) An exception to the rule exists where potential alibi witnesses are interjected into the case by the defendant but are not produced at trial. [Citations.] This exception does not apply when the existence of potential witnesses is elicited from a defense witness on cross-examination. (*People v. Mays* (1972), 3 Ill. App. 3d 512, 277 N.E.2d 547.) *We hold the exception likewise inapplicable when the existence of potential witnesses is interjected into the case through the State's witnesses.*

The State concedes that the prosecutor's reference to the defendant's failure to call these witnesses was probably erroneous, but argues the remark could not have resulted in substantial prejudice to defendant since the jury was instructed on the purposes of argument and the burden of proof. We disagree. *If error of this nature were deemed so easily cured, the prosecution could violate the rule and argue harmless error in any case.* We hold the remark constituted reversible error." (Emphasis added.) (*Eddington*, 129 Ill. App. 3d at 777, 473 N.E.2d at 125.)

Justice Miller dissented, stating that where there is convincing evidence of defendant's guilt and reasonable grounds do not exist for believing that the jury's deliberations and verdict were prejudiced by the remark, the error should be deemed harmless. *Eddington*, 129 Ill. App. 3d at 782, 473 N.E.2d at 128 (Miller, J., concurring in part and dissenting in part).

A prosecutor has wide latitude to comment on evidence and draw reasonable inferences therefrom and, absent a clear abuse of discretion, a court's ruling on the propriety of these comments will not be disturbed on review. (*People v. Rockman* (1986), 144 Ill. App.

3d 801, 813, 494 N.E.2d 688, 696.) Further, the prosecution may comment on the fact that pieces of evidence stand undenied or unexplained. (*People v. Eagle* (1979), 76 Ill. App. 3d 427, 435, 395 N.E.2d 155, 161.) However, as this court has pointed out, the prosecution may not mention a defendant's failure to call a witness when the existence of this witness is interjected into the case through the State's witnesses. (*Eddington*, 129 Ill. App. 3d at 777, 473 N.E.2d at 125.) Even so, in this case we find the trial court has cured the error and defendant has suffered no prejudice as a result of its commission.

At the hearing on defendant's post-trial motion, the trial court addressed the possibility of prejudice as follows:

"I believe there was no prejudice to the Defendant, in view of the Court's cautionary comments to the jury during jury instructions. They would have been better made at the time the issue came up, but I believe, in view of the fact that they were made, any possible bias or prejudice to Mr. Fly was eliminated."

A close examination of the record and appropriate case law reveals that error does exist in the instant case. Although we cannot condone the prosecutor's remark, we believe the error was adequately corrected by the trial court and, in this particular case, decline to follow the standard established in *Eddington*.

■ Defendant argues that in attempting to correct any misconception created by the State's comment, the trial court left the jury with the mistaken impression that it could not draw a negative inference against either side for failing to call a witness. Defendant cites *People v. Johnson* (1989), 191 Ill. App. 3d 940, 945, 548 N.E.2d 433, 436, which holds that the State's failure to call a witness allegedly present at the scene of the crime creates the unfavorable inference, as a matter of law, that the witness' testimony would be unfavorable to the State. Under *Johnson*, the defendant asserts that even if the court's impromptu instructions cured the error caused by the State's remarks, defendant was still prejudiced because the jury was led to believe an adverse inference could *not* be drawn against the State for failing to call the confidential source as a witness.

The State distinguishes the *Johnson* decision, citing *People v. Parsons* (1991), 222 Ill. App. 3d 823, 831, 584 N.E.2d 442, 448, where the court noted that in *Johnson* the State had unjustifiably refused to tender the informant to the defense for interview. Furthermore, the police testimony was inherently suspect—only one po-

lice officer out of a 12-member surveillance team testified at trial. Neither of these factors is present in the case at bar, where three police officers testified to defendant's presence at the location of the alleged sale of narcotics. Nor is there evidence that the State refused to tender the informant to the defense for interview.

Finally, *Parsons* notes that a negative inference is only warranted where the uncalled witness has testimony unique to the case. The court heard conflicting testimony as to whether the informant was in the room at the time the drug sale was made. Had he been in the room, he may or may not have seen the actual exchange of money for drugs. Against this, we have the testimony of two officers who testified they saw defendant enter the room where the drugs were sold, plus testimony of the undercover officer who allegedly purchased drugs directly from defendant. The State presented overwhelming evidence that defendant was involved in a sale of narcotics to an undercover police officer. We see no indication that testimony of the confidential source was so unique that its omission would create, as a matter of law, a negative inference against the State. The trial judge's comments to the jury regarding the matter are at best ambiguous and may well have confused the jury as to what inferences it was allowed to draw. However, in light of the overwhelming evidence of guilt, we find no indication that defendant was prejudiced.

### III

■ Finally, defendant argues the trial court failed to exercise its discretion by refusing to answer the jury's question regarding the whereabouts of the confidential source during the alleged drug transaction. We disagree.

The trial court record reads as follows:

"THE COURT: The time is now approximately 11:23 a.m. The jury has just transmitted to the Court through the bailiff the following written interrogatory: [Q]uestion: 'Was the confidential source in the game room during the transaction?'

Your position as to whether the Court should respond, and, if so, how [prosecutor]?

[Prosecutor]: First of all, the answer to the question is: 'I don't know,' and, secondly, I don't believe the Court should respond. I think the Court should say that, 'The evidence has been presented in the testimony,' or something like that. 'You decide.'

THE COURT: [Defense counsel]?

[Defense counsel]: I specifically asked [the police officer]— [s]o, I think we should answer it, and we should answer it in the affirmative. I was going to say I asked [the police officer] and because it was somewhat ambiguous about what—

THE COURT: I thought [the undercover officer] said he wasn't.

[Defense counsel]: Well, I specifically asked [the police officer].

THE COURT: Yeah.

[Defense counsel]: And [the police officer] said, 'Yes.'

THE COURT: But, [the undercover officer] said, 'No'; didn't he?

[Defense counsel]: [The undercover officer] didn't say.

THE COURT: One way or the other? Well, [the undercover officer] wasn't directly asked, but I thought the scenario he played out had just him and—

[Defense counsel]: He said he went back there and [defendant] went back there, but he didn't say anyone else did or didn't.

THE COURT: Oh, well.

[Defense counsel]: And, so, I specifically asked [the police officer] and—

THE COURT: I'm troubled with the formulation of the question, though. Just 'cause [the police officer] says it's true doesn't make it true, and I don't want to endorse anybody's testimony. I think the proper response by the Court is: 'This and all other questions of fact are for you, the jury, to decide based on the evidence as you heard it. The Court cannot answer your question. You must answer it.' Well, they don't have to answer it. I think the proper response is: 'You have heard the evidence and must arrive at your factual determinations based on the evidence. I cannot respond to your question.'

[Defense counsel]: Show my objection.

THE COURT: So noted. Overruled."

Defendant asserts, in not answering the jury's question or allowing the jury to have the relevant testimony read to them by the court reporter, that the trial court denied him a fair trial. Defendant cites *People v. Queen* (1974), 56 Ill. 2d 560, 565, 310 N.E.2d 166, 169, which states that error exists when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented. In *People v. Govin* (1991), 213 Ill.

App. 3d 928, 938, 572 N.E.2d 450, 457, this court held that a trial court has discretion to allow or refuse the jury's request for a review of testimony. After a close examination of the record, we find that the trial court was aware it was within its discretionary powers to answer the jury's question but felt the interest of justice was best served by leaving the question unanswered.

We affirm the trial court on all points.

Affirmed.

KNECHT and GREEN, JJ., concur.