THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CLEAVON KIDD, Defendant-Appellant.

First District (3rd Division) No. 1—85—1313

Opinion filed March 15, 1989.—Rehearing denied April 17, 1989.

Debra R. Salinger, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Lynda A. Peters, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Cleavon Kidd, was convicted of murder and armed violence and sentenced to 25 years in the Illinois Department of Corrections. On appeal, defendant contends that (1) the State's identification evidence was not sufficient to prove him guilty beyond a reasonable doubt; (2) the trial court erred in denying defendant's motion to quash arrest and suppress evidence; (3) the trial court erred in admitting evidence of an out-of-court identification of defendant; (4) the State's destruction of evidence precluded defendant from exercising his sixth amendment right to confrontation and his right to establish a defense; (5) the trial court improperly considered defendant's prior arrests in imposing a 25-year sentence; (6) the trial court abused its discretion in sentencing defendant to 25 years in prison; and (7) the trial court im-

properly entered judgment on two counts of murder since only one person was killed. We affirm in part and reverse in part.

On October 15, 1983, at approximately 8:30 p.m., Linda Hutcherson was walking eastbound on 16th Street in Chicago. As Hutcherson walked, she observed Darryl Tapes talking with an unidentified woman near a cleaning store. Hutcherson continued walking eastbound and passed the victim, Lionel Jones, as he walked westbound. Hutcherson then walked diagonally across a vacant lot.

After Hutcherson was approximately one-third of the way into the lot, she heard a gunshot, turned and saw two men running. Hutcherson began to run and looked over her shoulder as she proceeded. Hutcherson heard another gunshot, and when she looked back she saw a man, later identified as Lionel Jones, fall to the ground. Hutcherson then observed defendant standing with a gun in his hand. There were streetlights on both 16th Street and in the alley. Hutcherson watched defendant and observed his profile as he ran towards 16th and Homan and southbound down the alley. Hutcherson then returned to the vacant lot and waited until the police arrived.

At trial, Hutcherson testified that she identified defendant in a lineup on May 30, 1984. She stated that she was pretty sure that defendant was the person she saw shoot the victim. Hutcherson testified that she had observed the defendant in the community prior to the date of the shooting. She also stated that she had known the victim, Lionel Jones, for 15 years and Darryl Tapes for a few years. Hutcherson further stated that the person she saw holding the gun in the vacant lot on the night that Lionel Jones was killed was not Darryl Tapes.

Darryl Tapes also testified on behalf of the State. Tapes testified that he had known Lionel Jones for eight years prior to his death. He also stated that he was friends with defendant for six-years. On the day of the shooting, Tapes was with defendant and Jones in the vicinity of 16th Street and Homan. The three men were sitting on a porch when defendant and Jones got into an argument and began fighting. The fight was prompted by an argument concerning money defendant owed Jones for drugs Jones purchased for defendant. Jones and defendant exchanged words, and Jones kicked defendant. The three men then went their separate ways. Tapes and Jones met later that evening in the vicinity of 16th Street and Christiana. They went to the Holly Restaurant and had dinner until approximately 8 p.m. After leaving the restaurant, Tapes and Jones took the bus and returned to 16th Street and Homan. As Tapes and Jones crossed the street, they heard a gunshot. They were near the alley next to the vacant lot

when Tapes heard the first shot. Tapes looked back and saw defendant standing approximately 40 or 50 feet away with his arm extended and his fingers curled around what looked like a gun.

Tapes further testified that after hearing the first shot and seeing defendant, he and Jones began to run. As Tapes continued to run eastbound on 16th Street, he heard another shot, looked back and observed Jones on the ground in the vacant lot. Tapes then ran to a nearby house to inform Jones' girlfriend that he had been shot. Tapes returned to the vacant lot and later went to the hospital where Jones had been transported. At the hospital, Jones' girlfriend accused Tapes of the shooting and the police handcuffed him and took him to the police station. Tapes stated that while at the police station, officers took scrapings from his hands.

Finally, Tapes testified that he had prior convictions for aggravated battery and misdemeanor theft. He further stated that he had two auto theft cases pending. Tapes stated that his testimony in the present matter was in exchange for the State's recommendation of a two-year minimum sentence in his pending cases.

Chicago police officer Terrence Thedford testified that on October 15, 1983, he was assigned to investigate the shooting death of Lionel Jones. Thedford took Tapes into custody at the hospital after the victim's girlfriend implicated him in the shooting. Thedford stated that although gunshot residue samples were taken from Tapes' hands, he was never arrested or charged in the shooting. Thedford testified that Tapes informed him that defendant was the person who shot Jones. Based on the information provided by Tapes, Thedford went to defendant's home on October 16, 1983, but was unable to locate him.

Thedford then had a stop order placed on defendant so that he would be brought in for questioning if he was arrested on any other matter. Thedford failed to secure a warrant for defendant's arrest because Tapes would not cooperate and provide the necessary interview required by the State's Attorney's office. Thedford testified that he received a phone call from an attorney who indicated that the defendant would surrender himself voluntarily on October 24, 1983. Defendant did not surrender on that date. However, Thedford ultimately arrested defendant on May 30, 1984. Defendant was placed in a lineup and identified by Linda Hutcherson as the person who shot Lionel Jones.

The prosecution and defense stipulated that the gunshot residue test done on Darryl Tapes was sent to the crime lab and kept in inventory until May 24, 1984. They further stipulated that the sample was confiscated and destroyed before it was ever tested or analyzed.

Prior to trial, defendant made a motion to quash arrest and suppress evidence. The court heard the motion simultaneously with the trial. At the close of the State's case, defendant made a motion for a directed finding. The motion was denied. Defendant chose not to present any evidence. Following closing arguments, the trial court denied defendant's motion to quash arrest and suppress evidence. Defendant was found guilty of two counts of murder and one count of armed violence.

After defendant's post-trial motion was denied, a sentencing hearing was conducted. Following the introduction of evidence in aggravation and mitigation, defendant was sentenced to serve 25 years in the Illinois Department of Corrections. This appeal followed.

Defendant first argues that the State's identification evidence was insufficient to prove him guilty beyond a reasonable doubt. Defendant asserts that the testimony of Hutcherson was not reliable because she had an inadequate opportunity to view the offender. He further argues that the testimony of Tapes was tainted because he was a suspect in the shooting, a convicted felon, and was given leniency on other matters in exchange for his testimony. We disagree.

■ The positive identification of an accused by a single eyewitness may be sufficient to sustain a conviction. (*People v. Dean* (1987), 156 Ill. App. 3d 344, 351, 509 N.E.2d 618, 622.) An identification is considered positive, and thus reliable, where (1) the witness had a sufficient opportunity to view the offender, (2) showed an adequate degree of attention to the characteristics of the assailant, (3) described the perpetrator with a reasonable degree of accuracy, (4) displayed a sufficient amount of certainty in identifying the offender, and (5) identified the accused within a reasonable period of time following the crime. 156 Ill. App. 3d at 351, 509 N.E.2d at 622.

Here, two eyewitnesses, Hutcherson and Tapes, identified the defendant as the person who shot the victim. Hutcherson observed the defendant from a distance of 30 feet, as he chased the victim with a gun through the vacant lot. She observed defendant's profile as he ran down the alley and noted that he was wearing a hat. There were streetlights in the alley and along 16th Street. Hutcherson also recognized the defendant as a member of the community. Seven months after the shooting, Hutcherson identified the defendant in a lineup and told the police that she was "pretty sure" defendant was the person she saw shoot the victim on October 15, 1983. Furthermore, Tapes knew both defendant and the victim and spent time with them the day of the shooting. Although Tapes was a suspect in the shooting, he was never arrested or charged. Tapes admitted that he was a con-

victed felon and that he received a plea offer on unrelated cases in exchange for his testimony in the present case. However, the court took Tapes' background into consideration in evaluating his testimony. The court noted:

"Mr. Tapes has a background of activity. Take that into account here, but he tells a credible story as to the problems they had over the juice and beans, I guess as we call it now, cough syrup. And as I notice there, the deceased had codeine in his body at the time so that kind of backs up Mr. Tapes' assertion that the dissertation between Kidd and Jones arose over the syrup as they were drinking. And I think he told a credible story. He was right at the scene there. He knew who was there."

█ It is clear from the evidence adduced at trial that the witnesses' identification of the defendant was not so doubtful, vague, or uncertain that his conviction should be reversed on appeal. Further, the function of a court in a bench trial is to determine the credibility of witnesses and the weight that should be given their testimony. (*People v. Manion* (1977), 67 Ill. 2d 564, 577-78, 367 N.E.2d 1313, 1320.) A reviewing court should not substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398, 401.) Therefore, we conclude that the identification evidence provided by the State was sufficient to sustain defendant's conviction.

Defendant next argues that the trial court erred in denying his motion to quash arrest and suppress evidence. It is defendant's position that because his warrantless arrest was based solely on the unreliable statement of Darryl Tapes, no probable cause existed. Defendant further asserts that because Tapes was from the criminal milieu, had never given information to the police before, and gave information which totally exculpated him from the murder charges, probable cause was not established. Thus, defendant concludes that the arrest should be quashed and the subsequent lineup identification suppressed. We disagree.

██ █ The trial court's finding of probable cause will not be disturbed on review unless manifestly erroneous. (*People v. Jones* (1983), 119 Ill. App. 3d 615, 623, 456 N.E.2d 926, 931.) Probable cause to arrest exists where facts and circumstances known to the arresting officer would lead a reasonable and prudent man to believe that a crime has been committed and the person arrested committed the crime. (*People v. Tisler* (1984), 103 Ill. 2d 226, 237, 469 N.E.2d 147, 153.)

The requirement of prior reliability or independent corroboration which must be shown when the arresting officer acts upon information from police informers does not apply to information supplied by citizen-informers. (*People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466, 481.) Where a witness has never given information to the officer in the past, and is clearly not a professional or police informant, he is presumed to be a citizen-informant. (*People v. Beto* (1980), 86 Ill. App. 3d 622, 628, 408 N.E.2d 293, 298.) Further, a witness' prior arrest record alone does not make him a member of the criminal milieu. *People v. Fisher* (1979), 76 Ill. App. 3d 331, 334, 395 N.E.2d 54, 56.

 The evidence adduced at trial revealed that the facts known to the officer when defendant was arrested were that (1) Tapes was an eyewitness to the shooting, (2) Tapes was personally acquainted with both Jones and defendant, and (3) Tapes was present when defendant and the victim had an altercation concerning money and drugs on the day of the shooting. Although these facts alone were not necessarily sufficient evidence to convict, they did provide Thedford with sufficient probable cause to arrest defendant. The fact that Tapes had a criminal arrest record did not preclude him from acting as a citizen-informant in this matter. Tapes was merely questioned and never arrested or charged. Moreover, there is no evidence that Tapes was a professional police informant. Under the circumstances, we conclude that he was merely a citizen-informant and that the arresting officer was not required to establish Tapes' prior reliability before acting on the information which he provided.

 For the reasons that we have stated, we do not believe that the trial court's finding that there was probable cause to arrest defendant was manifestly erroneous. Therefore, we conclude that the trial court did not err in denying defendant's motion to quash arrest and suppress evidence.

Defendant next argues that the trial court erred in allowing the admission of an out-of-court lineup identification. It is his position that the admission was erroneous because it was not supported by an independent in-court identification. Defendant maintains that the identification evidence was used as a substitute for a positive in-court identification. Because defendant's assertions are based on an improper interpretation of relevant law, we disagree.

 The court in *People v. Rogers* (1980), 81 Ill. 2d 571, 579, 411 N.E.2d 223, 227, held that an "out-of-court identification *** should be admissible but should be used only in corroboration of in-court identifications and not as substantive evidence." Subsequently, the

legislature, by Public Act 83—367, added section 115—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—12). Section 115—12 allows the admissibility of out-of-court identifications as substantive evidence. (*People v. Davis* (1985), 137 Ill. App. 3d 769, 484 N.E.2d 1098.) It is applicable where a witness testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving the offender.

■ In the present case, Hutcherson gave a statement regarding her identification of defendant made after perceiving him. She also testified at the trial and was subject to cross-examination. Thus, the statutory requirements governing the admission of her out-of-court identification as substantive evidence were fulfilled. (Ill. Rev. Stat. 1985, ch. 38, par. 115—12.) An independent basis for an in-court identification is required only where the pretrial identification has been found to be unduly suggestive. (*People v. Williams* (1987), 118 Ill. 2d 407, 412-14, 515 N.E.2d 1230, 1233.) Although an independent basis for the in-court identification exists, the State is not required to demonstrate one where the pretrial identification is not found to be unduly suggestive. In the present case, because the lineup procedure was not found to be unduly suggestive, the testimony regarding the out-of-court identification was properly allowed. Therefore, we conclude that the trial court did not err in admitting evidence of Hutcherson's prior identification of defendant.

Defendant next argues that he was precluded from exercising his sixth amendment right to confrontation and his constitutional right to establish a defense where the State destroyed evidence from the gunshot residue test performed on Darryl Tapes. Defendant asserts that he was prejudiced because this evidence was potentially exculpatory. We disagree.

■■ Determination of whether a defendant's sixth amendment right to confrontation has been violated depends upon whether defendant has been deprived of the right to test the truth of his accuser's direct testimony. (*People v. Dixon* (1982), 105 Ill. App. 3d 340, 347, 434 N.E.2d 369, 375.) In preparation for trial, a criminal defendant has a right to have access to evidence that is material either to guilt or punishment. (*Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196.) Where evidence is destroyed, a due process violation occurs if the evidence possessed an exculpatory value that was apparent before the destruction and was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. (*California v.*

*Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528.) Only when both these factors are present will a due process violation be found. *People v. Sleboda* (1988), 166 Ill. App. 3d 42, 53, 519 N.E.2d 512, 519.

In the present case, defendant cross-examined Tapes extensively regarding the gunshot residue testing, the events surrounding the murder, Tapes' criminal background and Tapes' relationship to the victim and defendant. Defendant was also afforded the opportunity to provide testimony from other sources regarding the identity of the shooter. Moreover, defendant concedes that his assertion that the test would exculpate him is merely speculative. Based upon these facts, we conclude that the evidence did not possess an exculpatory value that was apparent before it was destroyed and that defendant was able to obtain comparable evidence by other means. Accordingly, we conclude that the State's failure to preserve the gunshot residue test did not infringe on defendant's sixth amendment right of confrontation or his constitutional right to establish a defense.

Next, defendant argues that his 25-year sentence for the offense of murder is excessive and the trial court improperly considered prior arrests during the sentencing hearing. It is his position that this error warrants a new sentencing hearing.

Although a reviewing court has the power to reduce an excessive sentence (107 Ill. 2d R. 615(b)(4)), a sentence set by the trial court will not be disturbed absent an abuse of discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348.) The trial court is normally in the best position to determine an appropriate sentence and its decision regarding sentencing is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Moreover, where improper evidence is presented, such as the introduction of an arrest or a charge, it is presumed that the trial court disregarded that which was improper, and considered only proper evidence in imposing sentence. (*People v. Garza* (1984), 125 Ill. App. 3d 182, 186, 465 N.E.2d 595, 598-99.) In order to obtain a new sentencing hearing, it is not sufficient to show merely that the trial court mentioned the arrest during the hearing, rather the record must affirmatively disclose that the arrest or charge was considered by the trial court in imposing sentence. *People v. Shumate* (1981), 94 Ill. App. 3d 478, 488, 419 N.E.2d 36, 44.

In the instant case, defendant was sentenced after the court heard evidence in aggravation and mitigation. In aggravation, the State argued that because of defendant's criminal history, and the nature of the offense, a significant sentence was warranted. In miti-

gation, defendant argued that he had no felony convictions, was disabled and society would not benefit by the imposition of a sentence in excess of the minimum.

After consideration of defendant's age, criminal background and the nature of the crime, the court felt that a sentence in excess of the minimum was justified. In fact, prior to sentencing defendant, the court had the following colloquy with defense counsel:

> "THE COURT: When I reviewed the facts in the case and I look over Mr. Kidd's background here, he certainly has been a burden on our police and judicial system, starting in 1969. That is sixteen years ago ***. I have what we call a rap sheet here consisting of four pages, 44 entries on it.
>
> MR. LEVIN: A lot of those are arrests.
>
> THE COURT: I agree with that, but it is 44. Based on that, his background and based on the nature of this matter here, I think this deserves a little more than the minimum. So, accordingly, I am sentencing him to serve 25 years in the Illinois Department of Corrections ***."

■■ Based on our reading of the record, we do not find that the trial court abused its discretion or improperly considered mere arrests in sentencing defendant. The court's response to defense counsel's comment regarding arrests indicates that it was aware that prior arrests could not be properly considered in imposing sentence. In addition, the 25-year sentence imposed is within the statutory range of 20 to 40 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a).) We therefore find that the trial court did not improperly consider mere arrests or abuse its discretion in sentencing defendant.

■■ Finally, defendant argues that he was improperly convicted and sentenced on two counts of murder when only one person was killed. The State concedes that it is improper to enter judgment on two counts of murder where only one person was killed. However, the State asserts that under *People v. Mack* (1984), 105 Ill. 2d 103, 137, 473 N.E.2d 880, 898, the sentence must be imposed on the most serious offense. We agree. Accordingly, we vacate defendant's conviction for murder under section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2)), and affirm defendant's conviction and sentence for murder under section 9—1(a)(1) (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)).

Affirmed in part; reversed in part.

FREEMAN, P.J., and WHITE, J., concur.