THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD PORRATA, Defendant-Appellant.

First District (2nd Division)   No. 1—91—0196

Opinion filed March 16, 1993.

530

Anthony Pinelli, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Rebecca Davidson, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

A jury found defendant guilty of aggravated criminal sexual abuse, aggravated criminal sexual assault, attempted aggravated criminal sexual assault and aggravated battery. Defendant was sentenced to consecutive terms totaling 33 years' imprisonment. Defendant appeals from his conviction and sentence.

On appeal, defendant contends that (1) the State failed to prove him guilty beyond a reasonable doubt of the criminal charges; (2) the trial court erred by allowing testimony on the out-of-court identification of defendant; (3) the trial court erred in denying his motion to strike the testimony of the serologist; (4) the trial court erred by allowing cross-examination on his post-arrest silence; (5) the trial court erred by allowing testimony that the victim did not identify another person as the assailant; (6) the prosecutor's comments during rebuttal closing argument prejudiced him; (7) he did not receive effective assistance of counsel; and (8) the trial court erred in sentencing him to four consecutive terms.

On November 28, 1989, at approximately 10:30 p.m., as the victim walked towards the apartment building where she lived, she noticed a man standing on a nearby parkway. The man charged the victim, and while grabbing her hair and covering her mouth, he told her to "shut up." Attempting to resist the attack, the victim pulled the man's hand from her mouth and screamed for help. The man punched the victim in the face with his fist and knee. The man threw the victim down and slammed her head against the ground. He dragged the victim into the apartment building. As the victim attempted to break away, he grabbed and punched her in the face. The victim attempted to talk the man into leaving by telling him that she lived with her mother. The victim bled from her mouth and nose.

The man stuck his hand up the victim's blouse and grabbed her breast. He turned the hallway light off, sat down on the stairs above the landing, unfastened his pants and exposed his genitals to the victim. A transparent cloth covering the window at the base of the stairwell illuminated the hallway by permitting the outside light to shine through. The man grabbed the victim's hair, pulled her hand to his body and demanded that she perform oral sex on him. The victim told him that she could not because he had injured her mouth. He ordered her to masturbate him. The man masturbated himself and ordered the victim to insert her finger in his anus. He ejaculated. He told her not to scream and he ran from the hallway to the outside.

The victim ran to her neighbor's apartment and called the police. They arrived immediately. The victim described her assailant as a man in his early thirties with a receding hairline, heavyset, wearing dark clothing and shorter than herself. Within a few minutes, the police returned with a man for the victim to view. The victim told the police that this man was not her attacker.

Shortly thereafter, the police drove the victim one-half block from her house to a house on Erie Street. She saw a man standing on a porch in a bathrobe. She identified the man on the porch as her attacker. The police instructed the victim to get out of the car and get closer so that she could be sure that the identified man was the right one. The victim complied, and after moving closer to the man, told the officers that she was "a thousand percent sure" that he was the one. Defendant, Edward Porrata, is the man the victim identified as her attacker.

At trial, the victim testified that she tried to bite defendant's finger, but that it did not bleed. She testified that defendant was not wearing underwear at the time of the attack. The victim stated that while inside and outside the building where the attack occurred, there was ample light for her to see defendant's face.

Officer Matthew Pilolli testified that he was near the scene of the crime when the call came through. He saw a man fitting the alleged perpetrator's description and stopped him. Officer Pilolli took the man to the victim for identification, but she told him that he had the wrong man. Officer Pilolli had a conversation with the man he had stopped and thereafter went to defendant's house. Other officers had already arrived. Pilolli testified that he heard the victim say that she was "a thousand percent sure" that defendant was the man who attacked her.

Officer Charles Toussas testified that on the night of the crime, he spoke with the victim and the first suspect. After talking to the first

suspect, Officer Toussas went to defendant's house. He asked for defendant and defendant's wife directed him to the rear bedroom. There, he found defendant nude and sweating. Officer Toussas advised defendant of the allegations against him and asked him to dress. Defendant complied. The officer further testified that he saw jeans, gym shoes and a pair of undershorts on the floor. The jeans and gym shoes had what appeared to be blood on them. He picked up the items and wrapped them. As they proceeded to the front door, defendant began pushing and shoving the officers, so they handcuffed him. Officer Toussas testified that they took defendant to the front porch. The victim identified defendant as being her attacker in Officer Toussas' presence.

Denise Troche, a serologist with the Chicago police department, testified that she received and examined a pair of jeans, a pair of undershorts and a pair of gym shoes under inventory No. 701209. She tested the items for the presence of blood. She identified human blood on the shoes and both the outside and the inside of the jeans. She could not determine the blood type. There was no blood or semen on the underwear.

Mrs. Petrillo, defendant's mother-in-law, testified on defendant's behalf. She stated that she resides with the Porratas, and on the night of the attack, defendant arrived home at approximately 10 p.m. The police officers later arrived at the Porrata home somewhere between 10:30 p.m. and 11 p.m.

Susan Porrata also testified on her husband's behalf. She stated that police officers arrived at their home on the night of the crime at approximately 11:20 p.m. They asked for defendant. She went back to the bedroom, woke defendant up and informed him that police officers were at the door. Defendant went to the door, and the officers asked him for some type of identification. Defendant went back into his bedroom. As defendant returned to the living room after getting his driver's license, the officers entered the house. Mrs. Porrata testified that the officers asked defendant to step outside. When defendant came back into the house, he was handcuffed. Defendant was taken to the police station. Later, a few police officers reentered her home. The officers searched the home and recovered defendant's clothing, which they took with them. She also testified that defendant was at home on the night and at the time the victim was attacked.

Defendant testified that he was handcuffed on the porch and pushed back into the house. He was not present when the officers recovered his clothing from his home. He got the blood on his clothes the night before the attack in an incident involving one of his dogs.

Defendant stated that he arrived home at approximately 10 p.m. on the night that the crime was committed.

Defendant initially contends that the evidence was not sufficient to prove him guilty beyond a reasonable doubt because the victim's identification testimony did not overcome his alibi testimony. The testimony of one identification witness, if positive and credible, is sufficient for a conviction. (*People v. Wehrwein* (1989), 190 Ill. App. 3d 35, 39, 545 N.E.2d 1005, citing *People v. Diaz* (1981), 101 Ill. App. 3d 903, 428 N.E.2d 953.) The most important factor is the victim's opportunity to view the assailant at the time of the crime. (*People v. Moore* (1983), 115 Ill. App. 3d 266, 270, 450 N.E.2d 855.) "The sufficiency of the opportunity to observe is for the trier of fact to determine." (*Wehrwein*, 190 Ill. App. 3d at 39-40, citing *People v. Davis* (1982), 104 Ill. App. 3d 1027, 433 N.E.2d 1011.) A reviewing court will not disturb that decision unless the evidence is so improbable as to raise a reasonable doubt as to defendant's guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

■ In the case at bar, the victim testified that she saw defendant before he attacked her from behind. She also saw defendant as they struggled to the ground and when he dragged her into the building. There was a light on in the hallway, but defendant turned it off. The victim was still able to see defendant because there was light coming through a thin curtain on the window at the bottom of the stairs. The victim testified that she was able to see defendant at all times. It is apparent from the jury's decision that it believed the victim's testimony. The evidence was not so improbable as to raise a reasonable doubt as to defendant's guilt.

Defendant also maintains that he was not proved guilty beyond a reasonable doubt in that the State failed to prove the elements of aggravated criminal sexual assault and aggravated criminal sexual abuse. Section 12—14 of the Criminal Code of 1961 (the Code) provides, in part, that an accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and during the commission of the offense, "the accused caused bodily harm to the victim." (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(2).) Section 12—16 of the Code states, in part, that an accused commits aggravated criminal sexual abuse if he or she commits criminal sexual abuse and that during the commission of the offense "the accused caused great bodily harm to the victim." (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(a)(2).) Bodily harm may be proved by the actual injury, such as bruises, or may be inferred by the trier of fact based upon common

knowledge. *People v. Lopez* (1991), 222 Ill. App. 3d 872, 879, 584 N.E.2d 462.

■■ Defendant argues that there was no evidence that he inflicted great bodily harm on the victim *during* the sexual acts. The relevant question on review of a criminal conviction when defendant challenges the sufficiency of the proof "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

The beating that defendant inflicted on the victim was an integral part of the continuous course of conduct which included the sexual abuse. He beat her to force her to perform the sexual acts. Defendant hit the victim with his fists and knees while they were on the street and continued to beat her once they were in the hallway of the building. Once he subdued her, defendant made her engage in the sexual acts. Therefore, we find that the physical harm defendant inflicted upon the victim occurred and existed during the commission of the offenses.

Defendant also argues that his conviction for aggravated criminal sexual abuse should be vacated under the one-act-one-crime rule. This argument is without merit because, " 'if a defendant commits more than one criminal act in an episode or transaction, he may be prosecuted for more than one offense unless the charges involve precisely the same physical act. If the physical acts are distinct, the defendant can be convicted of both ***.' " *People v. Segara* (1988), 126 Ill. 2d 70, 77, 533 N.E.2d 802, quoting Eisenberg, *Multiple Punishments for the "Same Offense" in Illinois*, 11 S. Ill. U. L.J. 217, 236-37 (1987).

■■ In the case at bar, each charge that defendant was convicted of resulted from physical acts that were distinct. Criminal sexual assault involves an act of sexual penetration. (Ill. Rev. Stat. 1989, ch. 38, par. 12—13.) The conviction for aggravated criminal sexual assault was based on proof that the defendant forced the victim to insert her finger in his anus while he masturbated himself while causing the victim great bodily harm. Defendant committed attempted aggravated criminal sexual assault when he attempted to force the victim to perform oral sex while causing the victim great bodily harm.

Sexual abuse involves an act of sexual conduct as defined in the statute. (Ill. Rev. Stat. 1989, ch. 38, par. 12—15.) " 'Sexual conduct' means any intentional or knowing, touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or accused, *** for the purpose of sexual gratification or arousal of the victim or the accused." (Ill. Rev. Stat.

1989, ch. 38, par. 12—12.) The State proved aggravated criminal sexual abuse by presenting evidence that defendant fondled the victim's breast and forced her to place her hand on his penis and testicles and to fondle him while causing the victim great bodily harm.

The instant case is similar to *People v. Rodarte* (1989), 190 Ill. App. 3d 992, 547 N.E.2d 1256, where the court relied on *Segara* and upheld separate convictions for violations of different subsections of section 12—14 of the Code. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14.) In *Rodarte*, the defendant beat the victim, gagged her, bound her and undressed her. He then pulled his pants down to his knees, placed his mouth over her breasts and forced his fingers into her vagina and anus. The defendant inserted his tongue into her vagina and his penis touched her vagina and anus, but there was no penetration. He was convicted of four counts of aggravated criminal sexual assault and aggravated battery. In this case, as in *Rodarte*, the evidence is sufficient to support separate convictions for all of the charged offenses.

■ Defendant's next contention is that hearsay evidence regarding his identification prejudiced him. The victim testified that after she identified defendant as her attacker, she stated that she was "a thousand percent sure" that defendant was her assailant. Two officers also testified that they heard her make the statement. Ordinarily such statements are inadmissible as hearsay, but section 115—12 of the Code of Criminal Procedure of 1963 creates an exception. (Ill. Rev. Stat. 1989, ch. 38, par. 115—12.) The statute states in relevant part:

> "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." (Ill. Rev. Stat. 1989, ch. 38, par. 115—12.)

In the case at bar, the victim testified that defendant was the man who attacked her. She was available for cross-examination and, in fact, was cross-examined by defendant's lawyer. The victim made the statement in question after she saw defendant and identified him as the assailant. (See *People v. Kidd* (1989), 180 Ill. App. 3d 1065, 536 N.E.2d 816.) Therefore, under the express statutory exception, the victim's statement is not rendered inadmissible by rules precluding use of hearsay evidence.

■ Defendant further contends that the trial court improperly denied his motion to strike testimony regarding blood testing. Denise Troche testified that she performed tests on the clothing recovered from defendant's home and determined that the stains found on some

of the items were blood. At the hearing on the admissions of the exhibits, trial counsel motioned to strike Troche's testimony, arguing that the State failed to prove the chain of custody for the items seized in defendant's home. The trial court acknowledged that under the facts of this case, there had to be a chain of custody, but denied defense counsel's motion because it was untimely. Defense counsel did not object to either the question or the answer when the prosecutor asked the serologist to give her opinion on the nature of the reddish-brown stains on the jeans and gym shoes. Counsel raised no objection to the chain of custody until the hearing on the admissibility of physical evidence. The trial court properly denied defense counsel's motion because "timeliness requires that the objection to evidence be made at the time of its admission." *Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 472, 558 N.E.2d 216.

Defendant also contends that he was denied a fair trial because the State cross-examined him on his post-arrest silence. Defendant took the stand on his own behalf. The following line of questioning took place:

"MR. BAILEY [Assistant State's Attorney]: And they brought you to the police station, right?

A. Yes.

Q. And at the police station you had a conversation with a detective and you told them that the blood from that clothing was from the night before; I fell, I hurt my nose, right?

MR. STILLO [Defense Attorney]: Objection.

THE COURT: Overruled.

MR. BAILEY: Is that what—

THE COURT: Wait a minute. Why the objection?

MR. STILLO: It presumes a conversation. It presumes a conversation, one, that is not in evidence that he even had a conversation.

THE COURT: Overruled.

MR. BAILEY: Did you?

A. No, I didn't.

Q. Well, when the police officers picked your clothing up, you told them that's why there was blood on your clothing, right?

MR. STILLO: Objection, Judge.

A. I wasn't present when they picked my clothing up.

THE COURT: Overruled."

The following questions were also posed during the cross-examination of defendant:

"MR. BAILEY: Now, the next day you went before a judge, right.

A. Yes.

MR. BAILEY: Did you ever tell that judge about the beating that the police gave you?

MR. STILLO: Objection, judge.

THE COURT: Overruled.

MR. BAILEY: Did you tell the judge about the beating the police gave you?

A. I told my lawyer."

Defendant contends that his constitutional rights were violated because it is improper for the State to comment on a defendant's post-arrest silence. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.) The defendant in *Doyle* maintained for the first time at trial that he was framed. The prosecutor tried to impeach that defendant by asking him why he failed to tell the police that he was framed when he was arrested. The State argued that defendant's silence at his arrest gave rise to an inference that the frame-up story was fabricated. The Court rejected the State's position holding that it was fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently given at trial. (*Doyle*, 426 U.S. at 618, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245.) *Doyle* was later followed in *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39.

█ In the instant case, the State's questioning of defendant on what he told the police officers was improper. The questioning created an unfavorable inference that defendant fabricated the explanation that he gave at trial regarding the blood on his clothing. However, this violation of *Doyle* was harmless error. We find beyond a reasonable doubt that the comment on defendant's post-arrest silence did not contribute to defendant's conviction. (*People v. Green* (1979), 74 Ill. 2d 444, 451-52, 386 N.E.2d 272.) Evidence of defendant's guilt was overwhelming. The victim positively identified defendant as her attacker shortly after the incident occurred and again at trial. The second set of questions, however, made reference to what defendant told the trial court regarding defendant's allegations that he was beaten up. The questions made no reference to defendant's post-arrest silence about the crime. Therefore, we find no merit to his claim that those questions violated his constitutional rights.

█ Defendant's next contention is that he was denied a fair trial because the victim testified that she did not identify the first suspect that was brought to her as her attacker. Defendant concedes that no

objection was made to this testimony and that it was not included in the motion for new trial. Because defendant failed to properly preserve the issue, he has waived it for purposes of appeal. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant asks this court to address the issue as plain error.

Issues that are otherwise waived may be reviewed under the plain error rule "where the record clearly shows that an alleged error affecting substantial rights was committed." (*People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 453.) To invoke the plain error rule, "[i]t must be plainly apparent that an error is so prejudicial that real justice has been denied or that the verdict of the jury may have resulted from the error." (*People v. Yates* (1983), 98 Ill. 2d 502, 533, 456 N.E.2d 1369.) Thus, for review under the plain error doctrine, the court must consider the degree of prejudice involved. (*People v. Mayden* (1979), 71 Ill. App. 3d 442, 389 N.E.2d 901.) In criminal cases, the plain error rule is applied when the evidence is closely balanced or the error is of such magnitude that defendant is denied a fair and impartial trial. *Young*, 128 Ill. 2d at 47.

Defendant argues that the plain error rule is applicable because this is a close case. We disagree. Defendant does not deny that the victim was beaten and raped, but challenges her identification of him as the perpetrator. As previously discussed, the victim had several opportunities to view her attacker and her identification of defendant was clear and consistent. In view of the overwhelming evidence in the instant case, we see no reason to believe that the jury verdict resulted from the victim's testimony that she did not identify the first person presented to her as her attacker.

Defendant further contends that comments the prosecutor made during rebuttal closing argument prejudiced him. The prosecutor pointed out that at trial, defendant had a haircut and wore a tie, but on the night of the attack, he wore something different. The prosecutor also stated that defendant's wife and mother-in-law had to tell their stories and were in a sense victims themselves.

In reviewing allegations of prosecutorial misconduct, the closing arguments of the State and defendant must be examined in their entirety and the allegedly offending statements must be placed in proper context. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) To merit reversal, the prosecutor's remarks must result in substantial prejudice to the accused. (*People v. Morgan* (1986), 112 Ill. 2d 111, 132, 492 N.E.2d 1303.) There is nothing in the record to indicate that the prosecutor's comments on defendant's attire unfairly prejudiced defendant. It is fair comment for the State to point out the dif-

ference in defendant's appearance at the time of the incident and at the time of trial. (See *People v. Shelton* (1986), 140 Ill. App. 3d 886, 895, 489 N.E.2d 879.) Therefore, the prosecutor's comments did not deny defendant a fair trial.

Defendant maintains that the prosecutor's comments allege that defendant coerced his wife and mother-in-law to lie on his behalf. Defendant cites to *People v. Johnson* (1986), 114 Ill. 2d 170, 199, 499 N.E.2d 1355, and *People v. Brown* (1981), 100 Ill. App. 3d 57, 426 N.E.2d 575, for the proposition that a prosecutor cannot call the defense witnesses liars without evidence to support the accusation. While there is no evidence that the prosecutor called defendant's wife and mother-in-law liars, the prosecutor's comments created an inference that they were lying. However, defendant was not denied a fair trial because there is no evidence in the record that the prosecutor's comments prejudiced him.

Defendant contends that he received ineffective assistance of counsel because his trial attorney failed to raise the proper objection at trial and in post-trial motions regarding the victim's testimony on the out-of-court identification of him and the introduction of expert testimony regarding bloodstains. Defendant also maintains that he was denied effective assistance of counsel because his counsel did not appear for jury selection and because his trial counsel failed to file pretrial motions.

A two-pronged test for determining ineffective assistance of counsel was established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and followed by Illinois in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. To prevail on a claim of ineffective assistance of counsel, defendant must prove that trial counsel's representation (1) was deficient and (2) prejudiced his defense to the extent that he was denied a fair trial. To show prejudice, defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) If the ineffective assistance of counsel claim can be disposed of on the grounds that defendant did not suffer sufficient prejudice, the court is not required to decide whether counsel's errors are serious enough to constitute less than reasonably effective assistance. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 511-12, 578 N.E.2d 952.

■ Any defense objection to testimony on the statement the victim made during her out-of-court identification of defendant would have been moot. As previously discussed, the testimony was admissi-

ble. Therefore, any objection to the testimony would not have changed the outcome of the case.

Defendant's ineffective assistance of counsel claim based on his trial counsel's untimely objection to the expert testimony on the bloodstains also fails. Defense counsel objected to the testimony because the State failed to prove a chain of custody for the evidence seized. However, the record does not indicate that the State would not have been able to call in additional witnesses to establish a sufficient chain of custody. It is the defendant's burden to prove that the outcome would have been different. Defendant has not sustained this burden.

Defendant further contends that he was prejudiced by his trial counsel's failure to appear for jury selection. The record reflects that his counsel arrived at court late, but jury selection did not commence until he arrived. There is no evidence that his tardiness affected the outcome of defendant's case. Defendant also argues that he was prejudiced because the trial court spoke with the State in the presence of prospective jurors about a rule to show cause as to whether defense counsel should be held in contempt of court. However, this contention is erroneous in that the record indicates that the prospective jurors had been excused for lunch and were not present at the time the trial court spoke with the State about the rule to show cause.

Police arrested defendant and searched his home without a warrant. Defendant argues that he was denied effective assistance of counsel in that his trial counsel failed to file a motion to quash his arrest, a motion to suppress the evidence seized and a motion to suppress identification testimony.

Defendant argues that the State did not have probable cause to come to his house and arrest him. In his brief, defendant argues that he was arrested in his bedroom, before the victim identified him. Defendant's trial testimony regarding when he was arrested contradicts what he argues in his brief. Defendant testified that after retrieving his driver's license for the officers, he stepped out onto the porch. The officers then came over and subsequently handcuffed him. To determine when defendant was arrested, the question is when, considering all the circumstances, a reasonable man innocent of any crime, would have considered himself under arrest. (*People v. Miller* (1980), 89 Ill. App. 3d 973, 978, 412 N.E.2d 175.) In analyzing the circumstances, as testified to by defendant, a reasonable man would not have considered himself under arrest until police handcuffed him on the porch. Defendant presented no evidence that the officers either

forced him to go outside onto the porch or restricted his freedom in any way prior to his arrest.

Defendant's own testimony indicates that he was arrested after the lineup where the victim identified him as her attacker. The identification of defendant provided probable cause for the officers to arrest him. If defendant's counsel was informed of the facts as testified to by defendant at trial, defense counsel could have concluded that a motion to suppress defendant's arrest would be frivolous and, tactically, bad trial strategy.

Defendant argues that the victim's in-court identification of him was tainted by the lineup which he maintains was impermissibly suggestive. In *Manion*, the court adopts the totality of the circumstances approach of *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, which "permits the admission of the confrontation evidence if, despite the suggestive aspect, the out-of-court identification possesses certain features of reliability." (*Manson v. Brathwaite* (1977), 432 U.S. 98, 110, 53 L. Ed. 2d 140, 151, 97 S. Ct. 2243, 2251.) Evidence of an unnecessarily suggestive identification may be admissible at trial if the identification is shown to be reliable. (*Manion*, 67 Ill. 2d at 571.) In evaluating the reliability of an identification, the factors to be considered are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation and the length of time between the crime and the confrontation. *Manson*, 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253, citing *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.

In the instant case, the victim had several opportunities to view defendant. She testified that she saw him before he grabbed her, then again as they struggled to the ground and again when he dragged her into the hallway. "She was no casual observer, but rather the victim of one of the most personally humiliating of all crimes." (*Biggers*, 409 U.S. at 200, 34 L. Ed. 2d at 412, 93 S. Ct. at 382-83.) The victim described her assailant as a man in his early thirties with a receding hairline, heavyset, wearing dark clothing and shorter than herself. Defendant was in fact 35 years old, 5 feet 7 inches tall, weighed 170 pounds, and the police recovered dark clothing belonging to defendant. The record indicates that a short period of time passed from the time the crime was committed until the victim identified defendant. Upon a review of the facts, we find that the victim's out-of-court identification was proper and in no way tainted the victim's in-court identification of defendant. Even if defense counsel had filed a motion to

suppress the victim's identification of defendant, it would have failed because the identification was reliable and, therefore, admissible.

Defendant maintains that his counsel should have filed a motion to suppress the warrantless seizure of evidence from his home. Even if the search was invalid and the evidence had been suppressed, we hold that there is no reasonable probability that the outcome of defendant's case would have been different. The evidence against defendant was overwhelming.

Defendant's final contention is that the trial court abused its discretion in sentencing him to consecutive sentences. Defendant argues that the term is excessive. The imposition of a sentence is a matter of judicial discretion, and absent an abuse of discretion, the sentence imposed will not be disturbed on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.

●■ In the instant case, the trial court considered the impact statements presented to the court on defendant's behalf, defendant's age, the fact that defendant had no criminal history, the nature of the crime itself, deterrence and section 5—8—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4.) The statute states in relevant part:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury *** in which event the court shall enter sentences to run consecutively." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4.)

In the instant case, defendant was convicted of aggravated criminal sexual assault which is a Class X felony and inflicted serious bodily harm on the victim. Under the statute, a consecutive sentence is warranted. The trial court did not abuse its discretion in sentencing defendant.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.